UNITED STATES of America, Appellee,

v.

Frank GRADY and John Jankowski,
Appellants.

Nos. 264, 265, Dockets 76–1201, 76–1208.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1976.

Decided Oct. 27, 1976.

Thomas A. Holman, New York City (O'Dwyer & Bernstien, Frank Durkan, New York City, of counsel), for appellant Grady.

Mark G. Barrett, New York City (Kenneth E. Bruce, New York City, of counsel), for appellant Jankowski.

Michael Q. Carey, Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty., Southern District of New York, Marc Marmaro, Jane W. Parver, Allen R. Bentley, Lawrence B. Pedowitz, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

The waves of tragedy from the internecine conflict in Northern Ireland have their ripple effects in this country. Appellants here are Frank Grady, a sympathizer with the Catholic minority in Ulster, and John Jankowski, a licensed firearms dealer in Yonkers, New York. Each was convicted of conspiracy to violate the federal firearms law, particularly 18 U.S.C. §§ 922(m) and 923, which together require a licensed firearms dealer to make true entries in a federal firearms record, and of ten substantive counts of making or causing to be made false entries as to ten .30-caliber semiautomatic rifles in Jankowski's record or "logbook"; Grady was also convicted of one count of unlawful exportation without a permit of these same rifles, in violation of 22 U.S.C. § 1934 and 22 C.F.R. §§ 121–23 (1975).

Conviction after a jury trial was had in the United States District Court for the Southern District of New York, Charles L. Brieant, Jr., *Judge*.[1] On appeal, appellants argue that the evidence was insufficient to convict them; that the prosecution was time-barred by the statute of limitations, 18 U.S.C. § 3282; that the statute proscribing the making of false entries in a logbook was not violated, since real people signed their own names and home addresses as purchasers of the weapons; that Irish police reports proving that rifles of the same make, appearance and registered serial numbers were found in Northern Ireland were improperly admitted into evidence; and that the trial court erred in permitting the introduction of subsequent similar act testimony as well as in its charge on aiding and abetting. We find appellants' points to be without merit and accordingly affirm the judgments.

I. *Sufficiency of the Evidence.*

As to all but the unlawful exportation count, appellants argue that there was insufficient evidence to convict them as a matter of law. The Government's proof was that in May and again in July of 1970, appellant Grady, with the assistance of Government witness John Casey and a Martin Lyons, purchased from appellant Jankowski a number of M–1–B carbines in order to ship them to Northern Ireland. At trial the Government produced four witnesses, each of whom had signed Jankowski's federal firearms record knowing he had not individually paid for and was not going to receive the firearm for which he signed. Taking the evidence in the light most favorable to the Government, as we are required to do in light of the jury verdict, there was ample proof as to Grady that he himself signed for two guns and encouraged the others to sign, and that he or Lyons gave the other individual "purchasers" transfer documents falsely purporting to show that each such "purchaser" had transferred the particular rifle "bought" from Jankowski to another person whom the original "purchaser" not only had never met, but who in several cases was dead.

Jankowski's defense was that he thought he was selling to members of a gun club, but by his own admission he never learned the name of the club. Moreover, the Government's proof was that Lyons was introduced to Jankowski as a person con-

---

1. On the exportation count, Grady received a sentence of two years, all but four months suspended, and three years' probation. On the other counts, imposition of Grady's sentence was suspended, and he was placed on probation for 40 months, to be served concurrently with the sentence on the exportation count. Jankowski was sentenced to three years, to be served concurrently, on each count of which he was convicted.

cerned about the troubles in Northern Ireland and interested therefore in purchasing rifles, hand grenades and machine guns. Jankowski advised he could not supply the latter items but said he could supply rifles as long as he obtained a signature in his logbook for each rifle supplied. He approached another dealer to buy 100–500 unregistered rifles. He received cash from Lyons and another co-conspirator. The individual signers did not pay any money to Jankowski as they went along and never received or authorized anyone else to receive the weapons for which they had signed from Jankowski, nor were they shown any weapons. In several cases each of the people signed the logbook twice, and in Casey's case the Government's proof was that Jankowski filled in two separate dates even though Casey signed on the same day. There was further evidence that on a Saturday night in July, 1970, when the gun shop was closed, Grady, Casey and Lyons went to the store and were let in by Jankowski, at which time they loaded over 25 carbines in Grady's and Casey's cars. There clearly was ample evidence from which the jury could have found that Jankowski made and caused to be made false entries in his logbook, that Grady fully participated in this crime as an aider and abettor, and that the two together conspired to commit the crime.

## II. Statute of Limitations.

Appellants next urge that the applicable statute of limitations bars their convictions. In this case all of the overt acts in the alleged conspiracy, as well as the conduct constituting the substantive offenses, took place between May 6 and mid-July of 1970. The original indictment was filed on May 2, 1975, just within the five-year statute of limitations under 18 U.S.C. § 3282.[2] The original indictment was not dismissed, but the Government filed a superseding indictment on the day trial commenced, March 8, 1976. Appellants argue that this superseding indictment was returned after the statute of limitations had expired.

■■■ This argument misconceives the interplay of an indictment with a statute of limitations. Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment. *United States v. Feinberg,* 383 F.2d 60, 64–65 (2d Cir. 1967) (dictum), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968); *Powell v. United States,* 122 U.S. App.D.C. 229, 352 F.2d 705, 707 n.5 (1965) (dictum). This is a sensible application of the policies underlying statutes of limitations. The defendants are put on timely notice, because of the pendency of an indictment, filed within the statutory time frame, that they will be called to account for their activities and should prepare a defense. *See United States v. Marion,* 404 U.S. 307, 322–23 & n.14, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The statute begins to run again on those charges only if the indictment is dismissed, and the Government must then reindict before the statute runs out or within six months, whichever is later, in order not to be time-barred.[3] Since the statute stops running with the bringing of the first indictment, a superseding indict-

---

**2.** 18 U.S.C. § 3282 provides:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**3.** The six-month extension of time after the dismissal of an indictment is provided by 18 U.S.C. § 3288 and is available only if the dismissal is for technical defects or irregularity in the grand jury. *United States v. DiStefano,* 347 F.Supp. 442, 444–45 (S.D.N.Y.1972); *United States v. Moriarty,* 327 F.Supp. 1045, 1047–48 (E.D.Wis.1971).

Appellants contend that § 3288 is the only way that the statute of limitations can be extended here and that, since that section allows indictment after the limitation period has run only if the prior indictment has been dismissed, the Government is without recourse. What they ignore is that § 3288 is operative, by its express terms, only after the limitation period has run, while in this case that limitation period has *not* run because it has been tolled by the continued pendency of the first indictment. To the extent that *United States v. Moskowitz,* 356 F.Supp. 331 (E.D.N.Y.1973), indicates a contrary result, we disapprove it.

ment brought at any time while the first indictment is still validly pending,[4] if and only if it does not broaden the charges made in the first indictment, cannot be barred by the statute of limitations. *United States v. Wilsey,* 458 F.2d 11, 12 (9th Cir. 1972) (per curiam); *United States v. Garcia,* 412 F.2d 999, 1000–01 (10th Cir. 1969); *see United States v. Strewl,* 99 F.2d 474, 477 (2d Cir. 1938) (L. Hand, *J.*), *cert. denied,* 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039 (1939).

Here, there is no question that the first indictment was still validly pending when the superseding indictment was returned. We must examine the two indictments carefully, however, to be certain that the second did not broaden or substantially amend the charges made in the first. Such an examination is particularly necessary in view of the judicial policy favoring repose in close cases. *See United States v. Marion, supra,* 404 U.S. at 322 n.14, 92 S.Ct. 455, 30 L.Ed.2d 468. In assessing whether the superseding indictment impermissibly changed the charges here, we are guided to some extent by cases dealing with variances between indictments issued by a grand jury and later amendments of indictments permitted by trial courts. We have held that "amendments of 'form' as opposed to substance are permissible," *United States v. Colasurdo,* 453 F.2d 585, 591 (2d Cir. 1971), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972), *quoting Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *see United States v. Wilner,* 523 F.2d 68, 72 (2d Cir. 1975), and the Supreme Court has indicated that "trivial" or "innocuous" amendments are acceptable, *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). *See*

*also Jackson v. United States,* 123 U.S.App. D.C. 276, 359 F.2d 260, 262–65, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966).

With these considerations in mind, we turn to the differences between the two indictments in the instant case. Upon examination, it appears that, to the extent any change of substance was made at all, the charges were narrowed, not broadened. *See Salinger v. United States,* 272 U.S. 542, 548–49, 47 S.Ct. 173, 71 L.Ed. 398 (1926). In the superseded indictment, the conspiracy count (Count 1) charged in paragraph two that Grady would cause Jankowski and the unindicted co-conspirators to enter their names in the logbook and in paragraph three that Jankowski would knowingly make false entries in the logbook, in that the unindicted co-conspirators and Jankowski would falsely enter their names and addresses as the "true purchasers" of .30-caliber semiautomatic rifles; in the conspiracy count of the superseding indictment paragraph two alleged that Jankowski would make false entries and paragraph three that Grady and Jankowski would and did cause to be entered in the logbook the names of persons who had not in fact purchased said rifles. Thus the conspiracy charge as a whole was for all practical purposes the same. Each and every overt act alleged in both indictments also was the same. We fail to see any substantive differences in the conspiracy count.

Counts 2 through 18 of the two indictments were precisely the same. Count 19 of the superseding indictment, charging Grady alone with unlawfully exporting the specific firearms mentioned, simply consolidated nine counts of the superseded indict-

---

4. Two indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment, *see DeMarrias v. United States,* 487 F.2d 19, 21 (8th Cir. 1973) (per curiam), *cert. denied,* 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974); *United States v. Strewl,* 99 F.2d 474, 477 (2d Cir. 1938) (L. Hand, *J.*), *cert. denied,* 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039 (1939), and if the defendant cannot show prejudice, *see United States v. Goodrich,* 493 F.2d 390, 394 (9th Cir. 1974); *United States v. Arradondo,* 483 F.2d

980, 983 (8th Cir. 1973), *cert. denied,* 415 U.S. 924, 94 S.Ct. 1428, 39 L.Ed.2d 480 (1974). Of course, a vindictive reindictment by a prosecutor may violate due process, *cf. Blackledge v. Perry,* 417 U.S. 21, 27–29, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (possible vindictiveness in reindictment for more serious charge following defendant seeking trial de novo on original charge); *United States v. Gerard,* 491 F.2d 1300, 1304–07 (9th Cir. 1974), but no such allegation is made here.

ment.[5] In short, we find that the superseding and superseded indictments were in all respects substantially the same, and the defendants were placed fully upon notice of the crimes with which they were charged in the superseding indictment by virtue of the superseded indictment. On this basis, and we repeat only on this basis, can the statute of limitations be said to be tolled as to the offenses charged in the superseding indictment.

### III. *Scope of the Statute.*

Appellants next argue that they did not make or cause to be made false entries in a federal firearms record as a matter of law, because the individuals who signed the book used their true names and addresses. It is a crime for a licensed firearms dealer "knowingly to make any false entry in, . . . or to fail to properly maintain, any record" that he is required to keep pursuant to 18 U.S.C. § 923. 18 U.S.C. § 922(m). Section 923(g) requires a licensed dealer to maintain records of "importation, production, shipment, receipt, sale or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary [of the Treasury] may by regulations prescribe." As a federally licensed dealer, Jankowski was thus required to "enter into a permanent record" information concerning "the sale or other disposition of" every firearm in his inventory, including entry of "the name of the person to whom the firearm . . . [was] transferred." 27 C.F.R. § 178.125(e) (1976) (formerly 26 C.F.R. § 178.125(e))

■ A major purpose of this legislation, as declared by Congress, was to control interstate and foreign commerce in weapons in order to combat crime. Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, § 901, 82 Stat. 226, *reprinted following* 18 U.S.C.A. § 921 (Supp.1976).[6] It follows, as the Seventh Circuit has pointed out, that the entries are "designed to keep a constant record of the transfer and location of firearms in order to reduce the indiscriminate flow of . . . weapons and the crime that inevitably follows in their wake." *United States v. Scherer,* 523 F.2d 371, 374 (7th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976). Without such a record, the ease with which arms could be anonymously acquired would subvert the purpose of the legislation. *See* S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S. Code Cong. & Admin.News, pp. 2112, 2113–14.

■ The individuals who signed Jankowski's book did not individually either purchase the weapons or take delivery of them.[7] Quite obviously the purpose of entering in the logbook the true names and addresses of a number of people, rather than the actual transferee or transferees (Grady could have signed for all of the guns, for example), was to cover up the fact that large numbers of weapons were being accumulated in one place for a specific purpose. *Cf. United States v. Honer,* 253 F.Supp. 400 (S.D.N.Y.1966) (Weinfeld, *J.*) (tax fraud conspiracy to deprive IRS of information as to winners of horse races by having other persons cash winning tickets). *See also United States v. Resnick,* 488 F.2d 1165, 1166 (5th Cir.) (employee of firearms

---

**5.** Count 20 of the superseding indictment, charging Grady with an obstruction of justice, differed both in respect to dates and specific names from its correlative, Count 29 of the superseded indictment, and it might accordingly constitute an improper amendment. But Count 20 was dismissed because the Government had failed timely to file with the court a bill of particulars in reference to Count 29 of the superseded indictment; it therefore is not involved here.

**6.** This legislation was later strengthened and achieved its present form (18 U.S.C. §§ 921–28) with the passage of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213. *See also Century Arms, Inc. v. Kennedy,* 323 F.Supp. 1002, 1015 (D.Vt.), *aff'd,* 449 F.2d 1306 (2d Cir. 1971) (per curiam), *cert. denied,* 405 U.S. 1065, 92 S.Ct. 1494, 31 L.Ed.2d 794 (1972).

**7.** Grady, of course, was not charged with aiding and abetting a false statement as to the two weapons for which he personally signed. Since he actually paid for and picked up these weapons, his activity as to them was not within the statutory prohibition.

dealer filled out firearms record listing herself as transferee of firearms sold to other persons; conviction of dealer upheld), *cert. denied*, 416 U.S. 991, 94 S.Ct. 2400, 40 L.Ed.2d 769 (1974). It matters not, of course, that the weapons were going to Northern Ireland, although it explains the motive for the transaction. All that was necessary to establish a violation of the statute was that persons who were not the true purchasers were knowingly permitted to sign as if they were.

### IV. *Admission of Irish Police Records.*

■ Much is made in the briefs of the admission into evidence of records of the formidable-sounding Department of Industrial and Forensic Science of the Ministry of Commerce and of the Royal Ulster Constabulary. These were entitled "Material Forwarded for Examination" and "Order for Disposal of Firearms/Ammunition." The ground of objection was that the documents constituted inadmissible hearsay. At most this admission would be harmless error, because the transfer of the weapons to Northern Ireland was relevant solely to Count 19, charging only Grady with unlawful export, and there was live testimony at trial (by Richard Anderson, officer in the Royal Ulster Constabulary) that four of the rifles had come into his official possession in Northern Ireland subsequent to their dates of purchase from Jankowski.

For the limited purpose of showing that the specified weapons were found in Northern Ireland on dates subsequent to the May, 1970, purchases, however, we think the records were admissible under the public records exception to the hearsay rule, codified in Fed.R.Evid. 803(8)(B).[8] Rule 803(8)(B) allows admission of records and reports of public offices or agencies setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," but is subject to an exception for "matters observed by police officers and other law enforcement personnel." In adopting this exception, Congress was concerned about prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803, at 16–21 (1975). The reports admitted here were not of this nature; they did not concern observations by the Ulster Constabulary of the appellants' commission of crimes. Rather, they simply related to the routine function of recording serial numbers and receipt of certain weapons found in Northern Ireland. They did not begin to prove the Government's entire case; they were strictly routine records.[9]

### V. *Admission of Subsequent Similar Acts.*

■ The argument that the trial court erroneously permitted the introduction of subsequent "similar act" testimony may be quickly answered. It is founded on testimony by the witness Casey that during the summer and fall of 1971 he accompanied appellant Grady to locations where he observed trunks containing firearms, one of which bore the name and address of a priest in Galway, Ireland; that he helped Grady load a crate of firearms into the latter's car; that Grady and Lyons carried into a Bronx apartment a trunk which the latter told him contained weapons; and that the witness picked up a shotgun at Grady's request in October, 1971. Such evidence is admissible within the discretion of the trial judge, *United States v. Natale*, 526 F.2d

---

8. Fed.R.Evid. 803 makes admissible, *inter alia*:

    (8) Public records and reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . .

9. Our decision on this point makes unnecessary a consideration of whether the records were admissible as business records under Fed.R. Evid. 803(6), which replaced that part of the Federal Business Records Act, 28 U.S.C. § 1732(a) (prior to 1975 amendment), making such records admissible. Nor need we consider the catch-all exceptions to the hearsay rule. Fed.R.Evid. 803(24), 804(b)(5).

1160, 1174 (2d Cir. 1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976), when it is substantially relevant for a purpose other than showing a defendant's criminal character or disposition and its probative worth outweighs its potential prejudicial impact. *See, e. g., United States v. Miranda*, 526 F.2d 1319, 1331 (2d Cir. 1975), *cert. denied*, —— U.S. ——, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *United States v. Torres*, 519 F.2d 723, 727 (2d Cir.), *cert. denied*, 423 U.S. 1019, 96 S.Ct. 457, 46 L.Ed.2d 392 (1975). Here the evidence was highly probative of Grady's knowledge and intent as well as his motive, and further suggested a general plan. *See* Fed.R.Evid. 404(b). The jury could have readily inferred that appellant Grady was involved in a continuing scheme to ship firearms to the IRA in Ulster, which would tend to establish that he had knowingly and intentionally committed the crimes charged in the indictment.

### VI. *Instructions to the Jury and Evidence of Export License.*

■ Appellant Grady argues that the court failed to instruct the jury that, in order to convict him of aiding and abetting Lyons in the unlawful export of firearms charged in Count 19, it had to find that Lyons was not lawfully licensed to export the weapons. He also argues that there was no evidence that Lyons was not licensed to export the firearms.[10] In making this argument, he concedes that the jury could infer that, if Lyons exported the carbines, Grady aided and abetted him.

As to the lack of evidence claim, the short answer is that the entire scheme of purchase from Jankowski indicated that it was a clandestine undertaking to export firearms to Northern Ireland; from this the

jury could have inferred that those associated with it would not seek an export license or use the services of a registered exporter, since either procedure would have involved the recording of information as to the disposition of the weapons, 22 C.F.R. §§ 122.-05(a), 123.10(a) (1975). Beyond this, Casey's testimony relating to the year 1971 was to the effect that he had heard from Grady that Lyons had dressed as a priest and gone down to the docks to ship two trunks to Ireland and had heard from Lyons himself that he had spent some time in the hills of Ulster with the IRA. This, coupled with Casey's testimony that the trunk was stenciled on its side with the name and address of a priest in Galway, leads to the inference that Lyons had not only shipped but perhaps had accompanied the weapons to Ireland in the guise of a priest, and that he would not have resorted to this subterfuge to transport the weapons had he been lawfully licensed to do so.

The judge's charge was that the jury could find Grady guilty on Count 19 only if it found that he knowingly and willfully aided in the export of the rifles and that, to convict him of aiding and abetting, the jury had to find all of the elements that proved an illegal export, including specifically "that the exporting was unlawful and done without a license." Appellant also argues that the court's charge did not make it clear that the jury must find that Lyons exported without a license in order to find Grady guilty of aiding and abetting an unlawful export. While some of Judge Brieant's language may not ring with bell-like clarity, the crucial portion of the court's actual charge in this regard, quoted in the margin,[11] belies appellants' claim.

Judgments affirmed.

**10.** There was clear proof that neither Grady himself nor Jankowski had obtained the requisite license.

**11.** Judge Brieant concluded his remarks to the jury on this subject as follows (emphasis added):

Once again I must remind you, you can only find Mr. Grady guilty on Count 19 if you are satisfied that the Government has proven

all four elements of the offense as I have explained them to you beyond a reasonable doubt. You can infer that the defendant knowingly and wilfully aided in the export of these articles, these rifles, if you find that he had said that he had done so, and if you find at a particular point in time that these particular rifles were in Yonkers in his possession and were later found in Northern Ireland, *even if you think that the actual exporting*

*was done by Martin Lyons, or by unknown persons, providing that the exporting was unlawful and done without a license.*