**UNITED STATES of America**

**v.**

**Gabriel REGUER etc., Defendant.**

**No. CR–88–00155–02 (CPS).**

United States District Court,
E.D. New York.

May 30, 1995.

Stuart J. Grossman, Grossman, Lavine & Rinaldo, Forest Hills, NY, for Gabriel Reguer.

Kelly A. Moore, U.S. Atty's Office, Crim. Div., Brooklyn, NY, for U.S.

### MEMORANDUM AND ORDER

SIFTON, District Judge.

This case involves a prosecution for wire fraud and conspiracy relating to the sale of counterfeit Passover Haggadahs. Defendant successfully moved to withdraw his plea for lesser charges, and by order of this Court the prior superseding indictment was reinstated against him. Defendant now moves for dismissal of the indictment as barred by the statute of limitations.[1] For the reasons set forth below, defendant's motion to dismiss the indictment as barred by the statute of limitations is denied.

### BACKGROUND

The original indictment in this case was filed in March of 1988, and the government filed a superseding indictment on May 23, 1988. This indictment charged Reguer and

---

1. Defendant's pretrial motion included several broad discovery demands. Upon the defendant's statements at oral argument that the government was complying and that there were no specific disputes to bring before the Court, these demands are deemed withdrawn without prejudice.

co-defendant Raphael Podde with three counts of wire fraud and one count of conspiracy to commit wire fraud, all in relation to the sale of counterfeit Guadalaxara Haggadahs, which are rare versions of a Jewish text read during Passover celebrations.

Trial began on June 2, 1988. After the jury was selected and the government made its opening statement, defendant Podde decided to enter a plea of guilty to the entire indictment. At his plea allocution, Podde informed the Court that he had convinced Reguer to sell "certain books [by] giving him a wrong representation." Reguer was offered the opportunity to plead guilty to different, lesser charges. He thus pleaded to a new information charging him with violating 31 U.S.C. § 5313 and § 5322 by causing the First National Savings Bank to fail to file a currency transaction report. Reguer admitted that he "structured" his transactions to avoid the reporting requirements but contended that he was never aware that it was a crime to do so. Reguer was sentenced to three years of probation and a fine of $150,-000. Reguer was also ordered to pay restitution to the victims.

Subsequent to the Supreme Court's holding in *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), that a defendant is not guilty of structuring under 31 U.S.C. § 5313(a)(3) unless he knew that his conduct was illegal, Reguer moved this Court to vacate his plea and expunge his record, arguing that *Ratzlaf* should apply to his conviction. In a Memorandum and Order dated January 5, 1995, this Court granted Reguer's request, vacated his conviction and plea of guilty, and directed the parties to appear to fix a new trial date.

The government subsequently moved to reinstate the May 23, 1988 indictment against Reguer. In a bench ruling on March 3, 1988, and in a subsequent written opinion, this Court granted the government's motion over the defendant's arguments that to do so would violate principles of double jeopardy. The Court specifically declined to rule at that time on defendant's arguments that the indictment was barred by the statute of limitations and reinstated the indictment without prejudice to a subsequent motion to dismiss on those grounds.

## DISCUSSION

Defendant argues that, when this Court dismissed the May 23, 1988 indictment, the tolling of the statute of limitations was lifted and that, since it is now more than five years since the alleged acts occurred, prosecution on the May 23, 1988 indictment is barred. The government responds with an analysis based in contract theory: it argues that, since the defendant has repudiated his plea bargain, both parties should be placed back in the position they were in prior to entering the plea agreement, and thus the May 23, 1988 indictment should be treated as never having been dismissed and the statute of limitations should be treated as tolled for the intervening period.

The Court of Appeals explained "the interplay of an indictment with a statute of limitations" in *United States v. Grady*, 544 F.2d 598, 601 (2d Cir.1976):

> Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment. This is a sensible application of the policies underlying statutes of limitations. The defendants are put on timely notice, because of the pendency of an indictment, filed within the statutory time frame, that they will be called to account for their activities and should prepare a defense. The statute begins to run again on those charges only if the indictment is dismissed, and the Government must then reindict before the statute runs out or within six months, whichever is later, in order not to be time-barred. Since the statute stops running with the bringing of the first indictment, a superseding indictment brought at any time while the first indictment is still validly pending, if and only if it does not broaden the charges made in the first indictment, cannot be barred by the statute of limitations.

*Id.* at 601–602 (citations and footnotes omitted); *United States v. Gengo*, 808 F.2d 1, 3 (2d Cir.1986). Other courts have acknowledged that providing notice to a defendant that he will be called to prepare a defense is

"the central policy underlying the statutes of limitation." *United States v. Italiano,* 894 F.2d 1280, 1283 (11th Cir.), *cert. denied,* 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990); *United States v. Pacheco,* 912 F.2d 297, 305 (9th Cir.1990) (quoting *Italiano* ). The Supreme Court set forth a parallel rational for limitations periods:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials to investigate suspected criminal activity.

*Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970).

The Supreme Court went on to say that "[f]or these reasons and others, we have stated before 'the principle that criminal limitations statutes are to be liberally interpreted in favor of repose.'" *Id.* (quoting *United States v. Habig,* 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968)). It is also established that statutes of limitations "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971).

█  Nonetheless, this is not a case where the government has been delinquent in bringing a prosecution or where the government seeks to disturb the interests in finality that the statute of limitations protects. Here, the Court has vacated a plea in accordance with the defendant's request; it was the entry of that plea that led to the dismissal of the charges defendant now seeks to avoid. The defendant had clear notice of the prior charges and took substantial steps toward the preparation of a defense—his plea on the lesser information was taken after trial on the May 23, 1988 indictment had already commenced. While the passage of time may have clouded the memories of material witnesses and others essential to the parties' cases, the fact remains that any prejudice to the defendant therefrom is not attributable to any action by the government, save their offer of a plea to lesser charges in the first place. The traditional reasons that support the protections of a statute of limitations are inapposite here. It would be fully consonant with the policies underlying the statute of limitations to consider the statute tolled with respect to the May 1988 indictment so that the government can be returned to the position it was in before the plea agreement was made.

It is clear that the defendant could be tried on the information to which he pleaded in 1988. *See Williams v. McMann,* 436 F.2d 103 (2d Cir.1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971). In *Williams,* the Court of Appeals approved the reinstatement of an indictment, albeit during the limitations period, when a defendant had applied to withdraw his guilty plea. The court wrote:

> For us to hold that one in Williams's position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter punishment in return for a guilty plea, when the defendant intended at the time he entered the plea to attack it at some future date. Although there is not suggestion in the record that [defendant] attempted this gambit, one way in which it might be achieved would be to plead guilty after a bargain has been struck with the prosecutor on the lesser charge and sentence. But, if the court after reading the defendant's probation report imposed a sentence higher than contemplated, the 'unbargained-for' longer sentence would then trigger proceedings to vacate the plea. Indeed, any reason the defendant could conceive for setting aside his plea and sentence would lose him little. If the defendant's argument were to prevail, then a trial on the lesser charge only could result.... To frustrate this strategy, prosecutors would be restrained from entering plea bargains, thereby adding fur-

ther to the staggering burdens of our criminal courts, and judges would become more rigid in exercising their discretion in favor of permitting withdrawal of a guilty plea. This would hardly enhance the administration of justice.

It is also clear that, under the general rule of *Grady*, a defendant could be tried on any superseding indictment that did not substantially alter or modify those charges and that the statute of limitations would be considered tolled as to such a superseding indictment as well. Under the peculiar facts of this case, the reinstated indictment should not be considered to broaden the charges in that information, since in every practical respect that information devolved from the May 23, 1988 indictment, even though the charged crime was new. This is the only result consistent with both the principles of *Williams* and the limitations analysis of *Grady*. To hold otherwise would produce as absurd a result as that forestalled in *Williams* by allowing reinstatement of an indictment in the first place.[2]

Neither the parties nor this Court has found any case on all fours with the present issue. However, both the Court of Appeals and other courts have indirectly referred to the question, and this Court's resolution is in accord with these decisions.

In *United States v. Liguori*, 430 F.2d 842 (2d Cir.1970), *cert. denied*, 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971), the Court of Appeals reversed the conviction of an individual subsequent to a change in the law wrought by the Supreme Court. In his concurrence, Judge Lumbard expressed his concern about overturning a plea to lesser charges. "In such a situation, there appears to be every reason to permit the government either to re-indict Liguori on the other counts, or to move in the district court to vacate the dismissal of the other counts. If the government elects to continue with the prosecution of Liguori it must do so promptly, as the acts charged occurred more than four years ago and the running of the statute of limitations will soon become a bar to further prosecution." 430 F.2d at 851. In *Ennis v. Fitzpatrick*, 438 F.2d 1201 (2d Cir. 1971), again vacating a conviction after a plea bargain, the court observed that reindictment "may be questionable here since more than five years have elapsed ... unless the statute of limitations has in some manner been tolled." *Id.* at 1202.

Citing Judge Lumbard's concurrence, the Seventh Circuit Court of Appeals in *United States v. McCarthy* looked closely at the considerations that might allow reinstatement of an indictment. 445 F.2d 587, 591 (7th Cir.1971). "We have no doubt that the Government had the right to make the rescission [of a plea agreement] complete and promptly to reinstate the dismissed counts. The question is not so easily answered, however, when the Government postpones its request for reinstatement for a period of three years and until after the statute of limitations has run." The court refused to allow reinstatement in large part because the government waited three years, until after the limitations period had run, to reinstate the indictment:

We agree with the implications in Chief Judge Lumbard's opinion that in a situation of this kind the government must proceed with diligence and that the right to prosecute will be lost unless the record is protected by filing a timely motion to reinstate the dismissed counts. Moreover, in view of the age of this litigation, and the fact that a retrial on Count III is unlikely to have a significant practical effect on its ultimate disposition ... we believe the scales should be tipped in favor of the defendant.

*Id.*

As noted above, the government has in no way been dilatory or delinquent in Mr. Reguer's case. Once Reguer's plea was vacated, the government moved promptly to reinstate the May 1988 indictment against him. Its conduct has been timely and proper; the

---

2. *Grady* does make plain that the clock begins running again when the charges in an indictment are "dismissed," but there is some reason to believe that such dismissal refers to one brought about by the deficiency of an indictment or some error of the government, not a dismissal pursuant to a plea agreement. *Compare* 18 U.S.C. § 3288 (pre–1988) and 18 U.S.C. § 3288 (post–1988) (old statute provided saving clause for reindictment after expired limitations period when indictment had been dismissed due to deficiency in the grand jury proceedings; amendments broadened applicability to dismissals for "any reason.").

government has not sat on its rights but pursued them diligently. In such a case, the statute of limitations is to be considered tolled, and thus the reindictment in this case is proper.

▮ A similar result would obtain under the contract-based approach advanced by the government. The Court of Appeals has rejected the strict application of the law of commercial contracts to plea agreements in the criminal context, *Innes v. Dalsheim,* 864 F.2d 974, 978 (2d Cir.1988), *cert. denied,* 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989), but such principles still may inform the analysis of a plea dispute. In *Innes,* the court acknowledged that systemic safeguards must accompany the acceptance of a guilty plea and that such safeguards "include requiring the prosection either to keep its promises or permitting the defendant to withdraw his plea." *Id.* (citing *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)). Moreover, the court observed that "[t]he rule also applies to the rarer situation in which the defendant has breached the plea arrangement. There the relief afforded the government includes release from its promises under the plea arrangement, and the right to proceed against the defendant without reference to its earlier promises." *Id.* (citing *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987)).[3]

The court in *Gonzalez–Sanchez* specifically addressed the situation where a defendant breaches a plea agreement:

> When a defendant has entered into a plea agreement with the government, the court must ensure that he receives what is reasonably due him under the agreement.

Contractual principles apply insofar as they are relevant in determining what the government "owes" the defendant. If the defendant lives up to his end of the bargain, the government is bound to its promises. On the other hand, if the defendant fails to fulfill his promises, the government is released from its agreement and may indict and try the defendant regardless of whatever it may have promised earlier. As in this case, the failure of the defendant to fulfill his promise to cooperate and testify fully and honestly releases the government from the plea agreement.

825 F.2d at 578.

By successfully moving to vacate his plea, Reguer has breached the agreement; in contract terms, he has revoked his acceptance. As part of the agreement, the government promised to dismiss the other pending charges, and in reliance on the agreement these charges were indeed dismissed. The appropriate remedy for the government, then, would be to treat their motion to reinstate the indictment as essentially a motion to vacate the dismissal of the charges dismissed in 1988. Just as Reguer has voided his plea and the consequences therefrom, so should the government be permitted to void their consent to the dismissal of the pending charges. Under this analysis, the May 1988 indictment becomes "pending" just as if it had never been dismissed.[4]

Accordingly, defendant Reguer's motion to dismiss the indictment as barred by the statute of limitations is denied.

SO ORDERED.

---

**3.** The *Innes* court specifically referred to *Santobello* in setting forth three-step framework for evaluating a plea dispute. That framework—which requires analysis of what was promised, whether there was a breach, and whether the defendant knowingly and intelligently waived his rights—is applicable to the situation where the relief defendant seeks is to vacate his plea in the light of a breach by either prosecution or defense, but not the case where the plea has already been vacated.

**4.** *United States v. DiStefano,* 347 F.Supp. 442, 443 (S.D.N.Y.1972), is not to the contrary.

There, the district court held that where an indictment has been dismissed for failure to prosecute, reindictment is impossible as "the court is without power to reinstate the indictment." In that case, dismissal did not bar further prosecution, and a new indictment could have been brought within the limitations period. Here, however, none of these factors apply, and the Court has the power, in the narrow circumstances presented by this case, to reach back through the statute of limitations and vacate the dismissal of the indictment.