**The UNITED STATES of America, Government,**

v.

**David RUTKOSKE, Defendant**

**No. 03 CR. 1452(RCC).**

United States District Court, S.D. New York.

Oct. 17, 2005.

Ira Lee Sorkin, Dickstein Shapiro Morin & Oshinsky LLP, New York, NY, for David Rutkoske, Defendant.

David B. Anders, U.S. Attorney's Office, New York, NY, for U.S., Plaintiff.

## MEMORANDUM & ORDER

CASEY, District Judge.

David Rutkoske ("Defendant") is charged with various acts of securities fraud in connection with the purchase and sale of NetBet, Inc. stock. The two-count second superseding indictment charges Defendant with conspiring to commit and committing securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. 240.10b–5; commercial bribery, in violation of 18 U.S.C. § 1952(a)(3); and wire fraud in violation of 18 U.S.C. §§ 1343, 1346. Defendant moves to dismiss both the first and second superseding indictments on statute-of-limitations grounds. In the alternative, Defendant moves for change of venue and for a bill of particulars. For the following reasons, Defendant's motions are **DENIED.**

### I. BACKGROUND

The Court presumes familiarity with the substance of this case and offers only those facts necessary to decide the motions. The case involves an alleged securities-fraud conspiracy conducted out of Lloyd Wade Securities ("Lloyd Wade"), which was headquartered in Dallas, Texas. Defendant was the President of Lloyd Wade for the time period at issue in this case and worked out of the Texas headquarters. Almost all of the brokers charged in this case worked in the West Patterson, New

Jersey Office of Supervisory Jurisdiction ("West Patterson OSJ"). Defendant still lives and works in Texas.

It is alleged that Lloyd Wade obtained large blocks of NetBet securities at below-market prices pursuant to secret arrangements. Lloyd Wade brokers, motivated by excessive undisclosed commissions, allegedly stimulated demand in the public market for NetBet securities by means of fraudulent "boiler room" tactics, then sold NetBet securities on the open market. It is further alleged that this scheme operated with Defendant's knowledge and approval.

The original indictment charged fourteen Lloyd Wade brokers but did not include Defendant in the charges. On April 6, 2004, a grand jury returned the first superseding indictment ("FSI") adding Defendant's name for the first time. It charged that the conspiracy occurred from "in or about December 1996 up to and including April 9, 1999" (FSI ¶ 18), and alleged a single April 9, 1999 act within the five-year limitations period, namely that co-conspirator Nicholas Cianciaruso "used high pressure sales tactics to induce an investor ('Investor No. 24') to purchase NetBet securities" (*id.* ¶ 23(*oo*)).

Counsel for Defendant questioned the validity of the April 9, 1999 act through correspondence with the Government dated January 12, 2005 and June 30, 2005. (*See* Sorkin Aff. Ex. C, Ex. D.) A July 5, 2005 letter from the Government changed the date of the April 9, 1999 act to April 6, 1999, and added a new April 21, 1999 act as well. (*See* Cosgrove Decl. Ex. A.) The earliest date still timely under the five-year statute of limitations was April 6, 1999. In fact, the monthly statement attached to the Government's July 5 letter revealed that the April 6 date related to the settlement date of the transaction, not the trade date. Both parties now agree the trade would have occurred three business days prior, on March 31, 1999, outside the statute-of-limitations period.

On July 28, 2005, another grand jury returned the second superseding indictment ("SSI") charging Defendant alone. The time period alleged was from "in or about late 1996 through at least in or about April 1999." (SSI ¶ 18.) The SSI did not allege the April 9 (or April 6, or March 31) overt act but instead alleged two new acts within the FSI's limitations period. The first states that Defendant "[o]n or about April 15, 1999 . . . paid excess commissions to Lloyd Wade brokers." (*Id.* ¶ 23(j).) The second states that "[o]n or about April 16, 1999, Nicholas Cianciaruso used high pressure sales tactics to induce an investor ('Investor No. 5') to purchase NetBet securities." (*Id.* ¶ 23(k).)

## II. DISCUSSION

### A. Defendant's motion to dismiss the indictments

The statute of limitations for securities fraud and conspiracy is five years. 18 U.S.C. § 3282. The Government satisfies the statute of limitations for conspiracy if it establishes that the conspiracy operated within the five-year period preceding the indictment and that a co-conspirator knowingly committed at least one overt act in furtherance of the scheme within that period. *United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir.2003).

Here, the FSI was returned on April 6, 2004, which means the Government must have alleged an overt act on or after April 6, 1999 for the FSI to be timely. The SSI was returned on July 28, 2005, which means the Government must have alleged an overt act on or after July 28, 2000 for the FSI to be timely.

The Government concedes that the April 9, 1999 overt act, which rendered the FSI timely on its face, in reality occurred on March 31, 2005, outside of the statute-of-limitations period. (*See* Gov't Opp'n at 9.) It also concedes that if the SSI does not relate back to the FSI then it is untimely and must be dismissed. (*See* Sorkin Aff., Ex. E at 8:2–7.) Thus, the decisive issue presented in the motion to dismiss is whether a superseding indictment that is not independently timely can relate back to a prior indictment that, although timely on its face, contains no overt act that actually occurred within the statute-of-limitations period.

In *United States v. Grady,* 544 F.2d 598, 601–02 (2d Cir.1976), the Second Circuit held that an untimely superseding indictment relates back to the original indictment if (1) it is brought while the original indictment is "validly pending" and (2) "it does not broaden the charges made in the first indictment." *Grady* also considered the policy behind the statute of limitations, namely, to put a defendant on notice that he will be called to account for his activities and to afford him the opportunity to prepare a defense. *Id.* at 601.

The primary disagreement between the parties is whether, under the first prong of *Grady,* the FSI was "validly pending" when the SSI was filed. Defendant argues the FSI was "void" because the overt act that made the FSI timely was later determined to be erroneous. In Defendant's view, a defective indictment is void at the moment its defect is discovered and can never be validly pending. The Government counters that the FSI was validly pending because the indictment on its face alleged a timely overt act. According to the Government, a defective indictment is nevertheless validly pending until it is dismissed. The Government's position better reflects the law and policy considerations outlined in *Grady* and subsequent cases.

■ A close reading of *Grady* reveals that an indictment is validly pending until it is dismissed. *See Grady* 544 F.2d at 601 ("Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment.... The statute begins to run again on those charges only if the indictment is dismissed ..."); *see also United States v. Smith,* 197 F.3d 225, 229–30 (6th Cir.1999) (reading *Grady* to hold that an original indictment "remains pending until it is dismissed or until double jeopardy or due process would prohibit prosecution under it"). Cases subsequent to *Grady* confirm this reading. In *United States v. Drucker,* 453 F.Supp. 741, 742 (S.D.N.Y.1978) *aff'd,* 591 F.2d 1332 (2d Cir.1978), the court found as a matter of law that "whether or not the original indictment was defective, that indictment served to toll the statute of limitations with respect to the charges contained therein." Similarly, in *Smith,* 197 F.3d at 228, the Sixth Circuit found that "even if the original indictment [were] defective on its face, the superseding indictment related back to the filing date of the original indictment." The court there rejected the reasoning in *United States v. Crysopt,* 781 F.Supp. 375 (D.Md.1991), and Defendant's argument here, that a defective indictment is a nullity and thus could never be "validly pending." *Id.* at 228–29. Rather, the court found that " '[v]alidly pending' under the *Grady* rule is unrelated to the issue of whether an indictment is defective or insufficient." *See Smith,* 197 F.3d at 229; *cf. Salmonese,* 352 F.3d at 613 (finding prosecution timely even though overt acts in indictment did not satisfy the statute of limitations where Government later proved timely acts not alleged in indictment).

Here, the FSI carried in it a latent defect but had not been dismissed when the SSI was filed. As such, the FSI was "validly pending" under the first prong of *Grady* when the SSI, which cured the defect in the FSI, was filed.

To relate back to a validly pending original indictment, a superseding indictment must not materially broaden or substantially amend the charges made in the first indictment. *See Salmonese,* 352 F.3d at 622. In this Circuit, a superseding indictment does not necessarily broaden an original indictment by adding overt acts and altering the relevant period of a conspiracy. *See United States v. Gengo,* 808 F.2d 1, 2–4 (2d Cir.1986) (finding superseding indictment that offered a new substantive count, added an overt act, and altered commencement date of conspiracy did not broaden original indictment). A court must consider whether the charges in the superseding indictment "allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *Salmonese,* 352 F.3d at 622.

Here, the SSI contains charges nearly identical to those included in the FSI. The SSI alleges violations of the same statutes by the same fraudulent scheme involving NetBet securities. The evidence relied on is the same. The two new timely allegations in the SSI expand the two-year conspiracy by only one week and in no way change the type or tenor of the conspiracy charge against or potential punishment of Defendant. The SSI's charges neither materially broaden nor substantially amend the FSI under the second prong of *Grady.*

The Court finds that the FSI was validly pending when the SSI was filed and that the SSI did not materially broaden or substantially amend the FSI. The SSI thus relates back to the FSI and was timely filed.

This holding is consistent with the policy behind the statute of limitations in criminal cases. *Grady* states that the purpose of the statute of limitations is to put a defendant on notice that he will be called to account for his activities and to afford him the opportunity to prepare a defense. *Grady,* 544 F.2d at 601. Defendant here was certainly put on notice when the FSI was filed. To be sure, Defendant was actively preparing a defense when he exerted considerable effort to unearth the latent defect in the FSI. Defendant's argument that the SSI, which corrects the defect in the FSI by adding overt acts within the original statutory period, somehow robs him of notice is unconvincing. For these reasons, Defendant's motion to dismiss the first and second superseding indictments is **DENIED.**

## B. Defendant's motion for a transfer of venue

Defendant moves for a transfer of venue to the United States District Court for the District of New Jersey, claiming that such a transfer would be in the interest of justice.

Federal Rule of Criminal Procedure 21(b) provides that "for the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding." Fed.R.Crim.P. 21(b). The burden is on the defendant to justify the transfer, *United States v. Spy Factory, Inc.,* 951 F.Supp. 450, 464 (S.D.N.Y.1997), and the final decision rests within the discretion of the court, *United States v. Maldonado–Rivera,* 922 F.2d 934, 966 (2d Cir. 1990). In considering whether to grant a motion to transfer, a district court will consider (1) location of defendant; (2) loca-

tion of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 244, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964). A court should look to all factors and the circumstances surrounding the case when rendering its decision. *Spy Factory*, 951 F.Supp. at 456.

Here, the Court need not address in great detail the location of the defendant, the location of documents and records, disruption of defendant's business, expense to parties, location of counsel, or accessibility of the place of trial because Defendant concedes these factors do not support his motion. The Court adds that none of the ten factors help Defendant himself as his location in Texas renders this case inconvenient for him whether it is held in New York or New Jersey. Further, the Court finds the location of documents, records, and counsel for Defendant in this District militate against transfer.

Defendant first contends that the location of possible witnesses warrants transfer to New Jersey. Although the location of witnesses is certainly an important factor, *see United States v. Alter*, 81 F.R.D. 524, 526 (S.D.N.Y.1979), Defendant does point to one defense witness who would be inconvenienced by a trial in the Southern District of New York. That many of the brokers involved in this matter previously worked and lived in New Jersey in the past says nothing of their current location. Defendant states that the testimony of the defrauded investors will not be relevant to the Government's case and adds that "even if the testimony of the alleged investors is needed, it is unclear that a significant number of them are located in SDNY." (Def. Mem. of Law at 19.) But this lack of clarity goes against Defendant where, as here, the burden is on him to justify transfer. *See Spy Factory*, 951 F.Supp. at 464.

Defendant next argues that the District of New Jersey is the location of events likely to be in issue at trial. He contends that New Jersey is the "center of gravity" of this case because the brokers worked and allegedly committed securities fraud at the West Patterson OSJ. *See United States v. Templin*, 251 F.Supp.2d 1223, 1225 (S.D.N.Y.2003) (finding the district where the defendant resided, worked, and where all of the charged illegal activities took place to be the "center of gravity"). Certainly New Jersey was the primary situs of the conspiracy. The Government notes, however, that Defendant is unlikely to contest the events that occurred in New Jersey because Defendant's guilt rests primarily on actions taken by Defendant in Texas, where he resided throughout the course of the alleged conspiracy. (Gov't Opp'n at 17.) It is unclear whether the events *at issue* occurred in New Jersey.

Finally, Defendant argues that the "less crowded" docket in the District of New Jersey favors transfer there. Defendant expects the Court to give weight to the claim that felony cases in New Jersey are resolved, on average, approximately two months faster than in the Southern District of New York, and expects the Court to ignore the fact that Defendant is scheduled for trial in this District on November 14, 2005. It is highly unlikely that Defendant could schedule a trial date sooner in the District of New Jersey. Further, given the Court's familiarity with the issues and parties in this case, it cannot be said that a "less crowded" docket would render

a speedier resolution of the issues in this case.

In sum, the factors set forth in *Platt* do not weigh in favor of transfer to the District of New Jersey. Neither the convenience of parties and witnesses nor the interest of justice call for transfer. Defendant's motion to transfer venue to the District of New Jersey is **DENIED**.

### C. Defendant's motion for a bill of particulars

Defendant moves under Federal Rule of Criminal Procedure 7(f) for a bill of particulars for (1) information and documents regarding specific investors; (2) documents regarding the brokers who allegedly participated in the conspiracy and fraud; and (3) documents already provided by the Government that the Government intends to use at trial.

 The decision whether to grant a bill of particulars is within the sound discretion of the district court. *United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989). Generally, a defendant is entitled to a bill of particulars where one is needed to provide sufficient information about the charge pending against him so as to enable him to prepare for trial, prevent prejudicial surprise, and avoid second prosecution for the same offense. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). A bill of particulars is appropriate only where the indictment is so general or vague that a defendant is not advised of the specific acts of which he is accused. *See Torres*, 901 F.2d at 234. In essence, particulars are appropriate where there is a need, not where they are merely a useful means for a defendant to acquire more detailed pre-trial discovery. *See id.; Feola*, 651 F.Supp. at 1131–32. Defendants do not "need" details about the charged conspiracy to prepare a defense, nor details on the means by which it is claimed they performed acts in furtherance of the conspiracy, nor details as to how and when the conspiracy was formed, or when each participant entered the conspiracy. *See id.* at 1132 (collecting cases).

 Under the above principles, Defendant's request for a bill of particulars must fail. First, Defendant posits no clear need for the information and documents regarding specific investors named in the indictment. The very fact that these investors are named in the indictment defeats the need for particulars because it shows the indictment is not so vague as to leave Defendant unable to prepare a defense or know the charges against him. Defendant's second request for particulars regarding the brokers who received excessive commissions also fails for lack of need, as this information is readily available from provided discovery. Moreover, if Defendant wants to discover which Lloyd Wade brokers received excessive commissions, he need only look to the numerous other defendants in this case who allocuted to as much during their guilty pleas. Finally, Defendant's request for all documents that the Government will rely on the trial is clearly outside of the "need" that a bill of particulars is meant to satisfy. Although there are over 65,000 pages of discovery in this case, it has already been shown that defense counsel is fully capable of parsing the documents for items relevant to Defendant's case. In his brief, Defendant offers no valid explanation as to why a bill of particulars is needed, only that he lacks information that a bill of particulars could provide. This does not satisfy the criteria required for particulars. Defendant's motion for a bill of particulars is therefore **DENIED**.

## III. CONCLUSION

In light of the foregoing, Defendant's motions to dismiss, or in the alternative for a transfer of venue and a bill of particulars, are **DENIED** in their entirety.