OPINION OF THE COURT
Albert Koch, J.
Defendant, Robert Bracken, charged with a violation of Vehicle and Traffic Law § 1192 (2), operating a motor vehicle with .10% or more alcohol in his blood, moved to suppress his statements and his breathalyzer test results.
During the Huntley hearing, issue was raised as to whether these should be barred from evidence because after his arrest the defendant was threatened with incarceration until arraignment unless he consented to take the breathalyzer test.
FINDINGS OF FACT
Based upon the undisputed credible evidence elicited at the hearing, the court finds the underlying relevant facts to be as follows:
On September 26, 1983, at approximately 11:00 p.m., the defendant was operating a motor vehicle which was stopped at a driving while intoxicated (hereinafter DWI) checkpoint located in Kings County at the Marine Parkway Toll Plaza. *1049 After the arresting officer detected the odor of alcohol and observed empty beer bottles inside the vehicle, the defendant stated that he had been drinking. The defendant also exhibited watery, bloodshot eyes and slurred speech. He was then arrested for a violation of Vehicle and Traffic Law § 1192, driving while intoxicated.
At this time, the defendant was properly advised of his constitutional rights pursuant to Miranda v Arizona (384 US 436 [1966]). The arresting officer then, in accordance with the official policy of the New York City Police Department, informed the defendant that unless he took the breathalyzer test which was going to be offered by the Intoxicated Drivers Testing Unit (hereinafter IDTU) he would not be issued a desk appearance ticket (hereinafter DAT) and as a result would be kept incarcerated until his arraignment.
Subsequently, another police officer assigned to IDTU gave the defendant the statutory warnings provided by Vehicle and Traffic Law § 1194; that refusal to submit to testing would result in the immediate suspension and subsequent revocation of his license whether or not he was found guilty of the underlying charge and that his refusal could be used as evidence against him. The defendant then submitted to both breathalyzer and coordination tests. The breathalyzer test registered .15% alcohol content in his blood. The defendant admitted having consumed six beers. Thereafter, the defendant was released and given a DAT to return for his arraignment.
ISSUE
Did the threats to withhold the issuance of the DAT and incarceration until arraignment constitute impermissible police coercion nullifying the right to use the obtained results as evidence?
Research has failed to disclose any appellate decision on the precise issue at hand. A review of the law absent the special circumstances which conditioned the defendant’s release upon the taking of the breathalyzer test reveals that admission into evidence of the test results and even the refusal to take the test passes constitutional muster. (South Dakota v Neville, 459 US 553 [1983].)
The basis of the court’s decision was that there was no impermissible coercion exerted upon the defendant to take the test or refuse the test. The court reasoned that "a refusal to *1050 take [the] test * * * is not an [action] coerced by the officer, and thus is not protected by the privilege against self-incrimination.” (South Dakota v Neville, supra, at p 564.)
The New York statute embodies this concept. Vehicle and Traffic Law § 1194 (1) is the "implied consent” statute and provides that any person who operates a motor vehicle in this State shall be deemed to have given his consent to a chemical test for the purpose of determining the alcoholic or drug content of his blood. Schmerber v California (384 US 757 [1966]) held that the State may properly compel a person suspected of driving while intoxicated to submit to a blood alcohol test, as the results are nontestimonial evidence unprotected by the 5th Amendment privilege against self-incrimination.
The New York State Court of Appeals has held that if a defendant can constitutionally be compelled to take a blood alcohol test, he has no constitutional right to refuse such a test. (People v Thomas, 46 NY2d 100 [1978].) "A state plainly has the right to offer incentives for taking a test that provides the most reliable form of evidence of intoxication for use in subsequent proceedings.” (Mackey v Montrym, 443 US 1, 19 [1979].) The issuance of a DAT is such an incentive.
An appearance ticket is a written notice issued and subscribed by a police officer directing a person to appear in a designated local criminal court at a future time in connection with his alleged commission of an offense. (CPL 150.10.) It was introduced by the Legislature in an effort to save scarce police resources. (See, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 150.10, p 394.) A defendant has no constitutional or statutory right to a DAT (People v Stone, 128 Misc 2d 1009), and a police officer who has arrested a defendant for a misdemeanor may choose instead to retain custody of the defendant until his arraignment in a local criminal court. (CPL 140.20.) The issuance of a DAT is mandated when, due to the unavailability of a local criminal court, the arresting officer cannot bring the arrested person before the court with reasonable promptness. It is noteworthy that even in this instance, the officer is not required to issue the ticket if the person appears to be under the influence of alcohol to the degree that he may endanger himself or others. (CPL 140.20 [3].)
This court disagrees with the finding in People v Stone (supra, p 1013) where that court concluded that "the police *1051 officer’s advising defendant of the police policy and procedure of custody, arraignment and bail, coupled with defendant’s expressed fear of jail does constitute psychological police coercion sufficient to exclude the breathalyzer test results”. It should be noted that in Stone (supra) there were the added facts of the police denying defendant’s requests to make a phone call or retain counsel prior to submission to the breathalyzer test. These added factors are not applicable to the case at hand but would not be controlling in any event.
When the police informed the defendant of the consequences of his failure to submit to a breathalyzer test they were simply providing him a factual recitation of what would happen. The testimony at the Huntley hearing did not reflect any physical coercion or verbal threats by the arresting officer.
The Vehicle and Traffic Law requires that persons who refuse the test have their licenses "immediately” suspended and sets forth a magistrate as one of those persons who have the right to effectuate the suspension (Vehicle and Traffic Law § 1194 [2]). The policy to withhold the issuance of the DAT and bring "refusers” to the magistrate is reasonable and not shown to be part of any systemic plan or desire to coerce persons arrested to take the breathalyzer test.
In fact, it would have been unreasonable and unfair not to tell the defendant of the policy to be followed upon his refusal to take the test. Giving the defendant knowledge of his choices concerning his liberty undoubtedly put pressure upon him to take the test. This was not a pressure, however, which rose to the level of impermissible coercion by any constitutional standard.
Accordingly, defendant’s motion to suppress the results of the breathalyzer test and his statements are denied.