James **INNES**, Plaintiff–Appellant,

v.

Stephen **DALSHEIM**, Superintendent of Downstate Correctional Facility, Robert Abrams, New York State Attorney General, John Santucci, Queens County District Attorney, Defendants–Appellees.

No. 187, Docket 88–2109.

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1988.

Decided Dec. 29, 1988.

Jonathan Silbermann, New York City, for plaintiff-appellant.

Michael O'Brien, Asst. Dist. Atty., Queens County, Kew Gardens, N.Y. (John

J. Santucci, Dist. Atty., of counsel, Kew Gardens, N.Y.), for defendants-appellees.

Before VAN GRAAFEILAND, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal is from a judgment of the United States District Court for the Eastern District of New York (Nickerson, J.) entered February 22, 1988 denying appellant James Innes's application for a writ of habeas corpus. The petition for habeas relief arose from a dispute concerning the effect of appellant's plea bargain in New York State Supreme Court. It is widely recognized that whether an individual plea agreement is a good bargain is an open question; that the process of plea bargaining is essential to the administration of the criminal justice system, however, is no longer open to question. On this appeal, we must decide whether appellant's plea agreement was one to which appellees may insist that he adhere.

## I  PRIOR LEGAL PROCEEDINGS

Appellant was indicted on four separate counts of robbery in the first degree committed in 1983 in Queens County, New York. In exchange for concurrent sentences of four and one-half to nine years imprisonment, Innes withdrew his not guilty plea and entered a plea of guilty to four counts of robbery in the second degree in New York State Supreme Court, Queens County. At the plea proceeding, the state trial judge asked Innes whether he had discussed the charges with counsel, and whether he understood them and the sentence that would be imposed under the plea arrangement. The following colloquy between the court and appellant occurred:

THE COURT: Have any promises been made except the following promise to induce you to plead guilty to the charge, the first thing you are going to remain at liberty pending sentence, secondly, you come back for sentence, your sentence will be four and a half to nine years as a maximum, in other words it will be a concurrent sentence, if you owe any parole violation time as a matter of law that parole violation time must be in addition to the sentence to be imposed upon you by this Court; do you understand that?

THE DEFENDANT: Yes....
THE COURT: Do you further understand this Court is conditioning your remainig [sic] at liberty and the pleas in this case on the following, number one, that you show up for sentence, number two, that you cooperate with probation, number three, most important, that you don't get re-arrested and charged with any other crimes or offenses; do you understand that?

THE DEFENDANT: Yes.
THE COURT: If you violate any of the conditions outlined by the Court, do you understand that you are facing the possibility of consecutive sentence totalling thirty to sixty years which would be the maximum sentence to be imposed by you under each one of these indictments as a second or predicate felon, you would owe seven and a half to fifteen—withdraw that, on the C felony, yes, it would be thirty to sixty years, you could face seven and a half to fifteen years consecutive sentence on each one of these; do you understand that?

THE DEFENDANT: Yes.
The trial court judge then carefully explained to Innes that his plea of guilty waived his privilege against self-incrimination, his right to a jury trial and his right to call upon and confront witnesses.

Two months later, Innes appeared before the same state court judge for sentencing. The court noted that while at liberty during the interim between the plea hearing and the date of sentencing, appellant had been arrested in Nassau County, New York on three robbery charges. The trial court then ruled that the plea agreement had

been breached, and that it was not required to impose a reduced sentence, stating

> THE COURT: ... [P]art of the provisions of the Court's promise is that the defendant would be left at liberty and the Court made three conditions in addition to the fact that the Court would live up to this promise and the three conditions were that the defendant would show up for sentence, he would cooperate with probation and not get rearrested. It is my understanding, sir, and I have documentation here from the District Court in Nassau County, that your client was arrested and charged with four separate robbery charges, three of which occurred while the defendant was at liberty between the time the Court took the plea and the time sentence was to be imposed.... Under those circumstances this Court does not feel bound to live up to it's [sic] obligation as the promise made by the Court to the defendant to give him four and a half to nine years sentence.

Defense counsel immediately moved to withdraw Innes's guilty plea. The court summarily denied that motion, and proceeded instead to impose two consecutive terms of seven and a half to 15 years—or a total sentence of 15 to 30 years—covering the four indictments. Counsel took timely objection to the denial of the motion to withdraw the plea and to the sentence.

Innes appealed to the Appellate Division, Second Department, which reversed and remanded the case to the trial court for imposition of the promised sentence or to permit withdrawal of the guilty plea. *People v. Innes*, 107 A.D.2d 712, 484 N.Y.S.2d 68 (2d Dep't 1985). When the People moved for reargument on the ground that the decision was inconsistent with *People v. DiDonato*, 100 A.D.2d 912, 474 N.Y.S.2d 957 (2d Dep't 1984), the Appellate Division granted the motion, vacated its prior decision, and affirmed the 15 to 30–year sentence. *People v. Innes*, 111 A.D.2d 356, 489 N.Y.S.2d 121 (2d Dep't 1985). The New York Court of Appeals denied leave to appeal. 65 N.Y.2d 982, 494 N.Y.S.2d 1050, 484 N.E.2d 680 (1985).

Innes thereupon petitioned for habeas relief in federal district court pursuant to 28 U.S.C. § 2254 (1982). He raised two arguments: first, he contended that conditioning his sentence on not being re-arrested prior to sentencing denied him due process and the presumption of innocence, thereby entitling him to specific performance of the plea agreement; second, he argued that due process required that he be permitted to withdraw his guilty plea. The district court rejected both contentions and denied his petition for a writ, though it did grant a certificate of probable cause. 680 F.Supp. 517, 520 (1988). This appeal followed.

## II  DISCUSSION

The sole issue before us is whether due process requires that this appellant be permitted to withdraw his guilty plea and stand trial on the four original counts of robbery in the first degree.

### A.  *Significance of Plea Agreements*

Most criminal convictions are achieved through pleas of guilty, usually made under a plea bargaining arrangement. In fact, it has been estimated that as high as 90 percent of all criminal convictions are obtained by guilty pleas. *See* A.W. Alschuler, *The Trial Judge's Role in Plea Bargaining, Part I*, 76 Colum.L.Rev. 1059, 1059 n. 1 (1976). Plea agreements are obviously vital to the efficient administration of criminal justice.

Such agreements involve interests significant to the state and to the criminal defendant. They permit the state to avoid the expense and the over-burdensome demands on court personnel and facilities that formal prosecution of every case would exact. A plea-bargaining defendant obtains the opportunity to reduce or fix the exact punishment that he will receive, and avoid exposure to the greater punishment to which he might otherwise be subject.

### B.  *Plea as a Waiver of Constitutional Right*

A plea of guilty "is more than a confession which admits that the accused did various acts; it is itself a conviction...."

*Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). By entering such a plea, a defendant waives his Fifth Amendment privilege against self-incrimination. *Id.* at 243, 89 S.Ct. at 1712. Upon its entry, a defendant also simultaneously waives nearly all of the safeguards that attend prosecution in a criminal trial. A defendant waives his right to call witnesses in his own behalf, his right to confront and cross-examine his accusers, and his right to trial by jury. *See Haring v. Prosise,* 462 U.S. 306, 319–20, 103 S.Ct. 2368, 2376–77, 76 L.Ed.2d 595 (1983); *Henderson v. Morgan,* 426 U.S. 637, 644–45, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976). As a result, the Supreme Court has long held that a defendant's waiver of significant constitutional rights must be knowingly and intelligently made. *See Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970). In *Brady,* for example, the Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 748, 90 S.Ct. at 1469. If the guilty plea is not "equally voluntary and knowing," it is inconsistent with the requirements of due process, and is therefore void. *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

The interrelationship between a plea of guilty and the waiver of rights involved was illuminated recently in *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 2682–86, 97 L.Ed.2d 1 (1987). *Ricketts* considered whether the Double Jeopardy Clause barred the first degree murder prosecution of a defendant, following his breach of a plea agreement under which he had pled guilty to a lesser offense, been sentenced, and begun serving his time. *Id.* 107 S.Ct. at 2682. Adamson had been arrested and charged with first degree murder for his part in the killing of an Arizona newspaper reporter. Shortly after trial began, Adamson and the prosecution agreed that he would plead guilty to second-degree murder in exchange for his testimony implicating two other individuals, allegedly involved in the same murder. The plea agreement provided, in pertinent part, that "should the defendant refuse to testify ... then this entire agreement is null and void *and the original charge will be automatically reinstated." Id.* (emphasis added). Adamson dutifully testified against both individuals. Following a mistrial, he refused to testify a second time, asserting that he had fulfilled the plea agreement. The State of Arizona thereupon reinstituted the original charge of first degree murder. The Supreme Court held that the plea agreement had been breached, and that defendant had specifically waived his Double Jeopardy defense by the express and easily understood terms of the plea agreement. *Id.* at 2685.

In reaching that conclusion, the majority noted that the plea agreement specified "in two separate paragraphs the consequences that would flow from [defendant's] breach of his promises." *Id.* Because "respondent unquestionably understood the meaning of these provisions," the waiver of his Double Jeopardy defense was made knowingly and intentionally. *Id.* Because of the specificity of the plea agreement regarding the consequences of the Adamson's breach, the majority could confidently find a knowing and intelligent waiver of his Fifth and Fourteenth Amendment right. *Id.* at 2685–86.

### C. *Resolution of Disputes Regarding Plea Consequences*

#### 1. *Contract Analogy*

A prosecutor's consent to a reduction of the charge set forth in the indictment is viewed as "consideration" for the exchange of the defendant's guilty plea. *See United States ex rel. Williams v. McMann,* 436 F.2d 103, 106 (2d Cir.1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971). When a dispute arises later as to the consequences of a plea, some courts believe the language and usages of contract law are useful in construing the plea agreement and in ensuring that the parties obtain their anticipated bargain. *See, e.g.,*

*United States v. Giorgi,* 840 F.2d 1022, 1025 (1st Cir.1988); *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Bridgeman,* 523 F.2d 1099, 1109–10 (D.C. Cir.1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 1744, 48 L.Ed.2d 206 (1976); *State v. Rivest,* 106 Wis.2d 406, 413–14, 316 N.W.2d 395, 399 (1982); *State v. Brockman,* 277 Md. 687, 696–97, 357 A.2d 376, 382–83 (1976). *But see People v. Selikoff,* 35 N.Y.2d 227, 240–41, 360 N.Y.S.2d 623, 318 N.Ed.2d 784 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975); *Hodes v. State of New York,* 113 A.D.2d 121, 122, 495 N.Y.S.2d 279 (3d Dept. 1985) (construing *Selikoff* as rejecting "the application of contract law to plea agreements" because "public policy considerations in the sentencing of criminal defendants override the ability to contract").

■ Comparing a criminal defendant with a merchant in the marketplace is an inappropriate analogy that we have rejected. *See United States ex rel Selikoff v. Commissioner of Correction,* 524 F.2d 650, 654 (2d Cir.1975). The law of commercial contracts plays only a limited role in resolving a plea dispute. New York law reflects this limited role by requiring the preparation of a presentence report before any plea agreement may be finalized. *See* N.Y.C.P.L. § 390.20(1) (McKinney's 1983); *see also Selikoff,* 524 F.2d at 654. Plea agreements are more properly viewed as agreements between the state and the defendant; when the parties arrive at an agreement constitutionally and in conformity with state sentencing procedures, each party may insist on adherence to the bargain struck.

### 2. *Proper Analytical Framework for Plea Resolution*

Courts do not lightly indulge in a presumption of a waiver of constitutional rights. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Because they implicate the waiver of fundamental rights guaranteed to persons charged with crimes, plea agreements must therefore be evaluated with reference to the requirements of due process. A defendant may not, consonant with these guarantees, be held to his negotiated plea of guilty when the promises upon which it was based remain unperformed by the prosecution. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Santobello* the defendant entered a guilty plea to a lesser included offense upon the prosecutor's promise to make no recommendation as to sentence. After several months of delay, the successor to the original prosecutor recommended, and the judge imposed, the maximum sentence. Noting that the prosecutor had breached the plea agreement, the Supreme Court held that "the adjudicative element inherent in accepting a plea of guilty must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 262, 92 S.Ct. at 499. These safeguards include requiring the prosecution either to keep its promises or permitting the defendant to withdraw his plea. *See Id.* at 262–63, 92 S.Ct. at 498–99. The rule also applies to the rarer situation in which the defendant has breached the plea arrangement. There the relief afforded the government includes release from its promises under the plea arrangement, and the right to proceed against the defendant without reference to its earlier promises. *See Gonzalez–Sanchez,* 825 F.2d at 578.

*Santobello* sets forth the analytical framework for evaluating a plea agreement. First, it must be determined precisely what was provided. This step is critical in the present case. Next, it must be ascertained whether there was a material breach of the agreement. Here it is conceded that petitioner breached the agreement. Finally, it must be demonstrated that the waiver of rights incident to the plea was the product of defendant's free and intelligent choice. *See, e.g, Ricketts v. Adamson,* 107 S.Ct. at 2684–86; *Santobello,* 404 U.S. at 262, 92 S.Ct. at 498. These interrelated steps are discussed separately

for purposes of clarity. In the instant case, for example, the question of what the plea agreement provided is intimately related to the question of whether Innes' waiver of his rights was made knowingly and intelligently. *See Boykin*, 395 U.S. at 242–43, 89 S.Ct. at 1711–12.

### D. *Resolution of Instant Plea Dispute*

■ Under *Santobello's* final step it must be demonstrated that Innes's waiver of his fundamental rights was knowingly and intelligently made with an understanding of the consequences. After detailing the conditions of the agreement to Innes, the trial court then explained the potential consequences of his breach. We quote the trial court in full.

> If you violate any of the conditions outlined by the Court, do you understand that you are facing the possibility of consecutive sentence totalling thirty to sixty years which would be the maximum sentence to be imposed by you under each one of these indictments as a second or predicate felon, you would owe seven and half to fifteen—withdraw that—on the C felony, yes, it would be thirty to sixty years, you could face seven and a half to fifteen years consecutive sentence on each one of these; do you understand that?

As we view this explanation, the problem lies both in what the trial court said and in what it failed to say. It notes that Innes faced "the possibility of consecutive sentencing" and that he "could face seven and one-half to fifteen years consecutive sentence." This does not straightforwardly tell the defendant that his guilty plea could not be withdrawn.

Nothing was actually said in the trial judge's admonition that were Innes rearrested he would be unable to withdraw his plea, nor was he told that his guilty plea would stand regardless of whether he was rearrested. Most significantly, Innes was not told that were he arrested the state court could and would unilaterally impose an enhanced sentence of 15 to 30 years, rather than the four and a half to nine years discussed during the plea bargaining

colloquy. Appellees interpret the court's statement to mean, "do you understand that if you breach any of the conditions, this court will sentence you?" Yet, that is not what the trial court said. It is surely an equally plausible explanation of the colloquy that Innes would—were he to breach the agreement—face trial on the four first degree robbery counts, exposing him to a 30 to 60 years sentence. The state trial court should have explained with greater clarity—the same clarity demonstrated in its allocution to Innes—the consequences of the breach. Instead, we are left to speculate on those consequences because of the ambiguity that resides in the language of the plea record.

The validity of a guilty plea is impaired only when its consensual character is brought into question. *See Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). In our view, Innes has raised sufficient doubt as to whether his plea was ever accepted, and even if it was, whether he was fully and "fairly apprised of its consequences." *Id.*

The provisions of the plea agreement that fix a criminal defendant's term of imprisonment are largely dictated by the state. Because of this and the substantial constitutional interests implicated by plea agreements, the state must bear the burden for any lack of clarity in the agreement and ambiguities should be resolved in favor of the defendant. *See Giorgi*, 840 F.2d at 1026 ("[T]he government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement."); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) ("[C]onstitutional ... concerns require holding the Government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in plea agreements."); *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985) (government has a "duty to use special care in their drafting" of plea agreements).

In the instant case, the colloquy between the trial court and appellant unfortunately does not remove the uncertainty surrounding the consequences of Innes' breach. The waiver in *Ricketts* was by a written

agreement that carefully detailed the consequences of a breach—"the parties shall be returned to the positions they were in before this agreement." 107 S.Ct. at 2685. In contrast, the present oral agreement was never memorialized in writing and was, as observed earlier, laden with ambiguity. Under this plea agreement, it cannot safely be said that Innes voluntarily, knowingly and intelligently waived his right to a jury trial. In particular, it is impossible to conclude that appellant truly understood that he was waiving his right to be tried on the original charges of first degree robbery, and agreed instead that were he rearrested the state trial court could unilaterally impose a 15 to 30 years sentence upon him.

We recognize that on this collateral attack by habeas petition, appellant has the burden to establish that he did not intelligently and knowingly waive his constitutional rights with full knowledge of the consequences. *See Johnson v. Zerbst,* 304 U.S. at 468–69, 58 S.Ct. at 1024–25. Under the circumstances, we are persuaded that whatever waiver appellant agreed to was without adequate knowledge of the consequences flowing from his breach of the plea agreement. In short, Innes has met his burden of proof. Hence, the state trial court's denial of Innes' request to withdraw his guilty plea and its subsequent imposition of a longer than discussed term of imprisonment deprived petitioner of due process. *Cf. Selikoff,* 524 F.2d at 653–54 (noting that trial judge's offer to permit withdrawal of guilty plea and defendant's refusal to do so cured any due process concerns). More specifically, the State of New York denied Innes his right to trial by jury on the charges made against him. In so doing, it denied him due process of law. 28 U.S.C. § 2254(d)(7).

Finally, contrary to the suggestions of the district court and appellees, Innes will not have obtained any benefit from his breach of the plea agreement. He does not gain the reduced sentence for which he attempted to bargain. Rather, because of his breach, he stands before the state court for trial.

Appellees' suggestion that this determination will permit defendants to control the plea process is unpersuasive. The state's leverage in the plea bargaining process is nearly always superior to that of a defendant. Rather, this holding should encourage greater clarity and specificity in plea negotiations and plea agreements. In that way, it will tend to ensure fairness, stabilize and finalize the parties' expectations, and reduce the waste of judicial resources required to review challenges to guilty pleas that are encouraged when the record of the plea proceedings is ambiguous.

## CONCLUSION

Accordingly, the judgment of the district court is reversed and the matter remanded to it with directions that it grant Innes' application for a writ of habeas corpus.

VAN GRAAFEILAND, Circuit Judge, dissenting:

In *People v. Selikoff,* 41 A.D.2d 376, 379, 343 N.Y.S.2d 387 (1973), *aff'd,* 35 N.Y.2d 227, 360 N.Y.S.2d 623, 318 N.E.2d 784 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975), the court said:

While many, if not most, sentence arrangements by the court at the time of a guilty plea are expressly made conditional upon the findings of the presentence report, it is clear that any such arrangement, no matter how phrased, must be considered contingent until such time as it is confirmed by the court, subsequent to its review of the presentence report, by the formal imposition of sentence.

If, as here, there is a significant change of circumstances between the plea agreement and the imposition of sentence, the court has the option to either permit withdrawal of the plea or to enforce the sentence as conditionally promised. *People v. Selikoff, supra,* 35 N.Y.2d at 238, 360 N.Y.S.2d 623, 318 N.E.2d 784; *People v. Carr,* 135 A.D.2d 722, 522 N.Y.S.2d 623 (1987) (mem.); *People v. Blackwell,* 42 A.D.2d 973, 348 N.Y.S.2d 152 (1973) (mem.); *People v. Di Giacomo,* 40 A.D.2d 689, 336 N.Y.S.2d 260 (1972) (mem.); *People v. Chadwick,* 33 A.D.2d 687, 306 N.Y.S.2d 182

(1969) (mem.); *see People v. Santobello*, 39 A.D.2d 654, 331 N.Y.S.2d 776 (1972) (mem.). As framed by the petitioner himself, the relief he seeks is in the alternative; either the original agreed upon sentence should be imposed (Appellant's Brief Point II), or he should be permitted to withdraw his guilty plea (Point I).

Without taking any position relative to the "Discussion" in the majority opinion, I vote simply to direct the grant of the alternative relief that petitioner seeks.