******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CRAIG KALLBERG
(AC 35800)

Gruendel, Alvord and Borden, Js.

*Argued January 6—officially released June 16, 2015*

(Appeal from Superior Court, judicial district of New
Britain, geographical area number fifteen, Alander, J.)

*Alex Guziak*, certified legal intern, with whom was *Alice Osedach*, assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Kevin J. Murphy*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The defendant, Craig Kallberg, appeals from a judgment of conviction, rendered after a jury trial, of one count of larceny in the third degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-124 (a) (2), and one count of conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124 (a) (2). The defendant claims that: (1) the trial court improperly denied his motion to dismiss all charges pursuant to a previous contractual plea agreement; and (2) improper statements by the prosecutor during closing argument deprived the defendant of his right to due process. Because we agree with the defendant on his first claim, we reverse the judgment of the trial court.[1]

The jury reasonably could have found the following facts, which are relevant to this appeal. On July 21, 2010, Michael Higgins and the defendant broke into a number of storage lockers located in the basement of an apartment building located at 92 West Main Street in Plainville. Higgins and the defendant took a number of items belonging to Robert Jerl, a resident of the apartment building.[2] Higgins was questioned by police in regards to the theft and admitted to stealing the items with the defendant. Both Higgins and the defendant subsequently were arrested and charged in relation to the theft.

The following procedural history also is relevant. The defendant was charged with, inter alia, larceny in the fourth degree and burglary in docket number CR-10-0046439-T.[3] The defendant and the state initially entered into a plea arrangement whereby the state, pursuant to Practice Book § 39-29, would enter a nolle prosequi (nolle) in three cases then pending against the defendant, including the case involving the storage locker theft, and the defendant would plead guilty to possession of drug paraphernalia in a fourth case and pay a fine of three hundred dollars. The plea agreement, however, was never accepted by the pretrial court, *Strackbein, J.*, due to the judge's unavailability.

On September 22, 2011, the defendant appeared before the trial court, *Kahn, J.*, assigned to his drug paraphernalia case. After confirming that Judge Strackbein was unavailable, the court held a hearing in order to address the disposition of the charges in the four cases in which the defendant was charged with criminal violations (plea hearing). During that hearing, the prosecutor entered a nolle in all four of the defendant's cases. The prosecutor articulated separate reasons for each nolle. When addressing the docket concerning the storage locker theft, the prosecutor stated that it was not clear that the facts of the case supported the necessary elements of a burglary charge, and that the codefendant in the larceny was deceased.[4]

The prosecutor also noted that they could not locate Jerl, and that the case was "unprovable." When addressing the drug paraphernalia charge, however, the prosecutor stated the following: "So what we had here was a proposed disposition to get rid of all of these files with a plea of drug paraphernalia and a fine of $300. That didn't work out today because we were unable to actually tap into Judge Strackbein. So I took the bull by the horns and asked [the defendant] to make a donation of $271 to the [Connecticut Criminal Injuries Compensation Fund (fund)]. . . . In light of that, what we do each and every day over in [another geographical area] is to nolle this case, as well. *So, now [the defendant's] matters are all resolved*, and we'll move to the next one." (Emphasis added.) Judge Kahn noted the entry of all four nolles.

Subsequently, pursuant to Practice Book §§ 39-29 and 39-31, the state withdrew the nolle on the charges pertaining to the theft from the storage locker and initiated a new prosecution.[5] On April 12, 2012, the state charged the defendant by way of a substitute long-form information with one count of larceny in the third degree as an accessory and one count of conspiracy to commit larceny in the third degree. The defendant filed a motion to dismiss on September 4, 2012, claiming that the charges against him had been permanently disposed of by a global plea agreement at the plea hearing.

Following a hearing on the motion to dismiss, the trial court, *Alander, J.*, concluded in an oral decision that the record of the plea hearing did not factually support the formation of a global plea agreement that encompassed all of the defendant's earlier cases. Rather, the court concluded that the state entered a specific and separate unilateral nolle pursuant to the reasons given during the plea hearing, because the prosecutor stated specific reasons other than the $271 payment to the fund for the entry of nolle. The court further concluded that the $271 payment only applied to the disposition of the possession of drug paraphernalia charge, and that although the payment might constitute a plea agreement for that charge, it did not encompass the other cases. As a consequence, the court denied the defendant's motion to dismiss.

Following a jury trial, the defendant was convicted on all charges. The court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a total effective sentence of four years of incarceration, suspended after two years, and three years of probation. This appeal followed.

At the outset, we set forth the applicable standard of review of rulings on motions to dismiss. "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclu-

sions and the resulting denial of the defendant's motion to dismiss is de novo." (Internal quotation marks omitted.) *State* v. *Ward*, 306 Conn. 698, 707, 52 A.3d 591 (2012).

The present case is controlled by our Supreme Court's decision in *State* v. *Rivers*, 283 Conn. 713, 931 A.2d 185 (2007). "We begin with an overview of the law governing plea agreements. [P]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements. . . . Thus, [t]he validity of plea bargains depends on contract principles. . . . Because [plea agreements] implicate the waiver of fundamental rights guaranteed to persons charged with crimes, [however, they] must . . . be evaluated with reference to the requirements of due process. . . . Therefore, [w]hen a guilty plea is induced by promises arising out of a plea bargaining agreement, fairness requires that such promises be fulfilled by the state. . . .

"When the contract language relied on by the trial court is definitive, the interpretation of the contract is a matter of law and our review is plenary. . . . When evaluating a contract, [w]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . [When] the language is unambiguous we must give the contract effect according to its terms. . . . [When] the language is ambiguous, however, we must construe those ambiguities against the drafter. . . . Whether a contract is ambiguous is a question of law over which we exercise de novo review. . . .

"In cases involving agreements like the plea agreement at issue in the present case, the drafter of the agreement, the state, generally holds substantially superior bargaining power over the other party to the agreement, the criminal defendant. As the Second Circuit [Court of Appeals] has explained, [b]ecause the government ordinarily has certain awesome advantages in bargaining power, any ambiguities in the agreement must be resolved in favor of the defendant. . . . Thus, the state, as the drafting party wielding disproportionate power, must memorialize any and all obligations for which it holds the defendant responsible, as well as all promises that it has made for the purpose of inducing a defendant to cooperate. The terms of the agreement should be stated clearly and unambiguously, so that the defendant, in assenting to waive certain fundamental rights, knows what is expected of him and what he can expect in return. Likewise, such clarity ensures that the state knows what it may demand of the defendant and what it is obligated to provide in exchange for the defendant's cooperation."[6] (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 724–26; see also *United States* v. *Pallad-*

*ino*, 347 F.3d 29, 33 (2d Cir. 2003).

Applying these principles to the facts of the present case, we conclude that the defendant's motion to dismiss should have been granted. Whether we view the plea agreement as a purely factual matter of the parties' intent, or whether we view the agreement as ambiguous and therefore to be construed in the defendant's favor, we arrive at the same conclusion. Put another way, to the extent that we give deference to the trial court's factual determination of the parties' intent, albeit consistent with the due process concerns expressed in *State* v. *Rivers*, supra, 283 Conn. 724–26, we are left with the firm and definite conviction that, based upon a review of the entire record, a mistake was made. To the extent that the plea agreement was ambiguous, we conclude that it must be construed in favor of the defendant and against the state.

During the hearing before Judge Kahn, the prosecutor clearly stated that the hearing was intended to solidify a global plea agreement, eliminating all of the docketed cases in which the defendant was named. He stated: "So, now [the defendant's] matters are all resolved." Because Judge Strackbein, who was originally expected to record the plea agreement, was unavailable, the prosecutor attempted to provide an analogous substitute for the original plea agreement. The prosecutor noted that he would "take the bull by the horns" to accommodate the unusual circumstances of the defendant's cases. This statement was made directly *after* the prosecutor noted that the parties had agreed on a global disposition of all open cases in return for a plea and a fine.

Reading that statement in context, it is clear to us that the state intended to substitute the new all encompassing disposition for the original plea agreement, albeit without explicitly so stating. This intent is further circumstantially supported by the prosecutor's contemporaneous request that the stolen property, which was to be used as evidence in the storage locker case, be returned to its rightful owner. "The destruction of any evidence seized at a crime scene is consistent with a belief that no further charges will be brought and lends credence to the defendant's claim that [he] reasonably believed [his] plea ended [his] criminal liability." *State* v. *Nelson*, 23 Conn. App. 215, 220, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991).

It is readily apparent from the transcript of the plea hearing that the prosecutor was attempting to adjust for the unusual circumstance in which the original judge, before whom the parties expected to dispose of the defendant's cases, was unavailable. The result was the formation of an implied in fact plea agreement between the prosecutor and the defendant. Although he did not use the talismanic language "global plea agreement,"

the prosecutor nonetheless essentially effectuated the original plea agreement by entering nolles in all four of the defendant's cases in return for a monetary contribution. We conclude, therefore, on the basis of our examination of the total circumstances surrounding the plea hearing before Judge Kahn, that the prosecutor and the defendant entered into a clear plea agreement.

Furthermore, when implementing the "bull by the horns" solution in the plea hearing, the prosecutor did not seek explicitly to ensure that the defendant was aware that the nolles were entered unilaterally and were *not* part of a plea agreement. Without a clear, explicit assertion by the prosecutor that the nolles were to be entered separately and not all as part of an agreement, it is a plausible reading of the record that the defendant may have reasonably believed that the nolles entered in all of his cases were in consideration for the $271 paid to the fund. The burden of the failure to alleviate that uncertainty falls upon the state. *State* v. *Rivers*, supra, 283 Conn. 725–26.

The state argues that the prosecutor's stated reasons for each nolle unrelated to the $271 contribution to the fund constitute an indicator that he did not intend to craft a global plea agreement, and as a result the trial court's denial of the motion to dismiss was not clearly erroneous. We disagree. The state would require that we construe the words of the prosecutor in a vacuum. That position would construe contextual evidence, gleaned from the entire record, in a dispute over the meaning of a plea agreement, too narrowly. Our jurisprudence makes it clear that contracts may be formed by conduct that recognizes the existence of such an agreement, even when there are no words of mutual assent. See *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573–74, 898 A.2d 178 (2006); *Rahmati* v. *Mehri*, 188 Conn. 583, 587, 452 A.2d 638 (1982). The conduct of the parties reveals to us that the defendant was offered a plea agreement, which was to be accepted, but that the unavailability of the judge before whom the plea agreement was to be entered caused the prosecutor to adopt an alternative means of disposing of the cases in a substantially similar fashion in exchange for substantially similar consideration by the defendant. The statements of the prosecutor reflect the intended result: an equivalent substitute for the original plea agreement.

The state also argues that any ambiguity in the existence of a plea agreement should be resolved in its favor, as an ambiguity would not make the trial court's ruling clearly erroneous. We disagree for two reasons. First, to resolve ambiguities in the formation of plea agreements in favor of the state would essentially undermine the reasoning of our Supreme Court and the Second Circuit Court of Appeals. See *State* v. *Rivers*, supra, 283 Conn. 725–27; see also *Innes* v. *Dalsheim*, 864 F.2d 974, 979 (2d. Cir. 1988) ("the state must bear

the burden for any lack of clarity in the agreement and ambiguities should be resolved in favor of the defendant"), cert denied, 493 U.S. 809, 110 S. Ct. 50, 107 L. Ed. 2d 19 (1989).

Second, the state essentially concedes in its brief that some form of plea agreement existed between the state and the defendant in which the state entered a nolle for the drug paraphernalia charge in consideration of the $271 paid to the fund. Thus the ambiguity rests not in whether an agreement existed, but whether the terms of the agreement for the $271 payment encompassed the other outstanding charges against the defendant. As we noted previously, we exercise plenary review in determining whether a plea agreement is ambiguous and require any ambiguities to be resolved in favor of the defendant. *State* v. *Rivers*, supra, 283 Conn. 725; *Innes* v. *Dalsheim*, supra, 864 F.2d 979.

The judgment is reversed and the case is remanded to the trial court with direction to vacate the conviction and to render judgment of dismissal.

In this opinion the other judges concurred.

[1] This conclusion renders it unnecessary for us to consider the defendant's second claim.

[2] The missing items included a hiking backpack, rollerblades, a duffle bag filled with paintball equipment and a ghillie suit used in paintball games, a bicycle, a snowboard, and a set of golf clubs and other golf equipment.

[3] The record does not specify the exact charges that were pending under that docket number. The prosecutor did not specify during the plea hearing other than to note that there was a charge of larceny in the fourth degree and "a bunch of burglaries."

[4] At an unspecified point after his arrest but before the defendant's September 22, 2011 hearing, Higgins passed away. The record does not specify the cause or the date of his death.

[5] The record does not disclose the reason that the state withdrew the nolle.

[6] Although the plea agreement in *Rivers* was in writing and was drafted by the state, we conclude that the same principles apply in the present case, where the state articulated the plea agreement on the record.